Thank you, and may it please the Court. My name is Deepak Gupta, and I represent the appellant, Patricia Arellano. I'd like to reserve three minutes for rebuttal, if I can. The question in this appeal is whether a debt collector, a defendant under a lawsuit, in a lawsuit under the Fair Debt Collection Practices Act, may use the debt collection process to completely immunize itself from that lawsuit by purchasing the FDCPA claim through a writ of execution and at a public auction, and then dismissing that claim as its owner. Could I ask you, there was a complaint filed in March of 2015. That complaint is actually the basis for the current action that's before us. That's correct. There was a default judgment ended on May 19, 2015. There is no indication that there was any response to the default judgment, nor was there a motion made for relief of the default. Isn't that really the cause of the problem? If the plaintiff, in this case I'll call it the debtor, had answered the complaint, there would be no case here. You mean answered the complaint? The original complaint, yes. There would be no case here. In fact, she could have, I assume, she could have alleged as a defense or even as a counterclaim the fact that the complaint in the first case violated the FCDPA. Couldn't she have? Well, you know, the merits of the underlying Fair Debt Collection Practices Act case, I just want to be clear, are not before you. Those will have to be litigated on remand, assuming they're in the first place. But they were alleged in the complaint that's before us. That's right, Your Honor. And so my question is, if she had, she basically, the cause of the problem here was her unexplained failure to respond to the original complaint, which she could have responded to, setting up a defense and possibly a counterclaim, and that that's what caused the problem here, and then you're making an argument as if the sky is going to fall in if we don't rule in her favor. Let me try to explain to you why I do think the sky will fall. It's not unusual that there is Fair Debt Collection Practices Act litigation that arises out of State court collection litigation, and that that litigation takes place in Federal court. Now, it may be that in those instances the debtor who may or may not have been represented by counsel could have asserted the Federal claim as a counterclaim, but there's no rule that those Federal claims have to be asserted as Federal, as counterclaims. And, in fact, they are frequently litigated in Federal court. Now, all of this, of course, goes to the merits, we think, of the claims. The question here is whether Federal claims of any kind, whether they involve a default judgment, whether they involve a harassment or misrepresentation, whatever the nature of the claims are, whether Federal claims under the Fair Debt Collection Practices Act can be assigned through this mechanism, through a writ of attachment and a purchase of the underlying claims by the defendant. That only happened, and I'm not going to repeat myself, I'll just say, that only happened because she defaulted. And even the argument that she didn't have money to hire a lawyer in the original proceeding seems to me to fall short of the rule, because in her complaint here, in this complaint, I think it's in the excerpts of the record of page 44, she claims as part of her damages that she was forced to go through the expense of hiring a lawyer to prosecute the current complaint. And that occurred approximately 60 days later. Sure, Your Honor, but there's absolutely no rule that defaulting in state court prevents a consumer from asserting their rights under the Federal statute. And the question here is not the merits of those underlying claims. The question before you is, can a Federal claim, a Federal statutory claim, be assigned to the defendant in order to be able to proceed in a proceeding asserting those very claims? And what I want to say... I know the question I have, and then I'll stop, is I don't understand your use of the word assignment. If you owe me money, I could assign your obligation to pay me, and I write, and I give it to somebody else. It's a purely, you know, contractual transaction. I don't know what makes this an assignment to begin with, other than that it enables you to invoke precedent that deals with the issue of assigning these claims. I agree. It's not a precise fit with the concept of assignment, and I think if you want to use... I think maybe the more accurate category is the transferability of those claims. So if you had a Venn diagram, you'd have one circle would be transferability, assignability, and survivability are within those circles. The point that I want to make, and this is the argument that I think is actually before you, is that those questions are questions of Federal law. When you're dealing with Federal statutory rights, the courts are uniform, including cases in this court are uniform, that Federal law decides whether or not Federal statutory claims can be transferred in this manner. It's not left to the vagaries of State law. And the reason for that is if you left it to State law, you would have different rules in different States with respect to the enforceability of Federal claims, and you would frustrate the purposes of the Federal scheme. So you have a case from this court, the New Corp case. It involves securities law that holds that transferability of Federal securities claims is decided as a matter of Federal common law. And we've looked, we haven't found a single case for many of the circuits that regard this as a question of State law, whether it's ERISA or securities law or antitrust law. It's all dealt with as a matter of Federal law. Now... How is this different from settling a case? In other words, you bring this, you brought this action, or your client brought this action, or any plaintiff brings an action, and the defendant says, we'll settle the case, and you give us a release, and we'll give you $1,000. Is there anything wrong with that? No, there's nothing wrong with that. I mean, that's an assignment of the claim, in effect, as you're, in the broad sense that you're using it. No, I don't think that's right. I mean, I do think the cases say that Federal common law has something to say about the circumstances under which you can settle claims, but when there's a settlement, there's consent, there's an agreement, the parties come to the table and make this agreement. That's not what happened here. What happened here is that the very kind of practice that the statute regulates, the debt collection practice, practices, were used to purchase the claim by the defendant, assign it to, the defendant assigned it to itself, and then sought its dismissal. And that is a very rare occurrence, and we've never seen, there's no other example of this happening in a Fair Debt Collection Practices Act case. There are examples of this happening in other contexts, and there's a law review article I'd commend you to in the Pepperdine Law Review that's cited in our opening brief. There are very few examples of defendants doing this at all, and the courts, even under State law, are very, very critical of this kind of practice. But under Federal law, this is a question, when it involves a Federal statutory claim, this is a question of Federal common law or preemption. And whether you use either of those two labels, however you conceptualize it, what the courts have done is looked at whether or not it frustrates the purposes of the Federal scheme or undermines Federal uniformity to allow this kind of practice. And I don't really see any argument from my friend on the other side that it doesn't do that. I mean, if you look at the purpose of the Fair Debt Collection Practices Act, it is to give, have a private attorney general scheme to allow consumers to assert these consumer protection rights against debt collectors, and there's a certain solicitude for the debtors. And that's... That may be, but can I tell you my experience in the district court? I see any number of cases that involve the most technical violations of the FC, whatever, you know what I mean. And what usually happens is that they settle where the plaintiff, where the nominal plaintiff gets the maximum statutory damages of the thousand dollars, and it's class action. In this case, she's asking for a half million dollars as for the class. And the cases usually settle for a relatively small amount of money. And probably I would guess, although we don't have to approve these settlements, that the lawyer winds up with more money than the plaintiff. So it just... From that experience, and the violations that are alleged here, that they told her she could have 30 days to contest the validity of the debt, otherwise it would be deemed admitted, but the complaint said she had 20 days to answer. I mean, that doesn't shock my conscience. And that's probably what I just described to you, what I've seen any number of times in the district court probably would have happened here. Those would all be reasons to go to Congress and to ask to have the statute repealed. No, I mean, there is a federal statute here, and the law is uniform, that when you're dealing with the transferability of federal statutory claims, that is a question of federal law, and the question then is, does it undermine the purposes of the federal remedial scheme to allow that kind of transfer, and does it undermine national uniformity? And there's no question here that it does. If you look at this court's case, New Corp, it involves the assignment or the transfer of federal securities claims when a security is transferred, and what the court said there is that it would undermine the congressional purpose of protecting investors, it would undermine national uniformity to leave that to state law, and so we're going to have a federal rule, and we are not going to permit this kind of automatic transfer. I would argue that the policies here are even greater. There's even a greater threat to the core purposes of protecting consumers from debt collection. Is there a specific statute that you're relying on, or are you relying on purpose? Well, I think you can conceptualize this in a couple of different ways. The cases are uniform, but this is a question of federal common law. You then have to look to the purposes and objectives of the federal statute, which here is the Fair Debt Collection Practices Act. An alternative way of conceptualizing this is obstacle preemption. So then the statute there is the Fair Debt Collection Practices Act, which gives the consumer, the person who is the object of the practices in question, the right to sue, and we'd submit that it's inconsistent with that remedial scheme and with Congress's design to permit this kind of transfer. The person has got a right to sue, which as we've established, she also has a right to settle the suit for whatever amount she wants to settle the suit, and in this particular case, she could have avoided the problem altogether by simply putting in an appearance in the state court, and I don't see what's so objectionable about that, particularly since she's not authored any reason why she allowed the default to be entered, only to file this complaint within 60 days. For all we know, it might have been deliberate in the hope of provoking the filing of the complaint. I mean, neither she nor her attorney had ever seen this tactic used. I've talked to consumer protection attorneys around the country, and they have never seen this. The tactic comes at the end. According to my timeline, the complaint here is filed on July 15th. The original complaint that she defaulted is May 19th. The writ of execution is not entered until April 15th. The original complaint that she defaulted is May 14th, and the notice of sale until October 15th. So there was ample time for her to take steps, including moving to vacate the default if there was this great injustice, and that she, arguably, is the cause of the problem. Your Honor, that would be an argument for asking Congress to insert a new provision that cuts off consumers' rights to invoke this statute in the event that there's a default. That's not what the statute says, and that's not before you. Well, the default doesn't cut off her rights. The default just simply allows a judgment to be entered, which could be subsequently executed. Right. And the only question before you on appeal now is whether she has the right to proceed to the merits, or whether this transfer is going to be honored as a matter of federal law or state law. And if there are no further questions on that. I've got one, if you don't mind. Would you walk me through, this is sort of a technical matter, let's assume for the sake of argument that in response to the proposed writ of execution that she had decided to use her exemption rights under Nevada state law. So under Nevada state law, she can exempt $16,000 of a personal injury judgment. You can exempt $1,000 for any personal matter. What happens then? Let's assume that they buy it, they've got the cause of action, or do they have the cause of action, or just the right of proceeds. Do you know? I don't know. I mean, that would be a question of state law. Because I'm not sure the cause of action transfers anyway on the execution if, and your client didn't do this, if she had exercised her exemption rights. Well, they drafted, I mean, you know, I think most unsophisticated consumers, you know, they may not show up, they may not have the wherewithal or the counsel to know to make that argument. It's a clever argument. But I think either way. It's a statutory argument. She got notice of it saying here's the writ of execution, here's what you can do. But this writ of execution. But my curiosity is if you exercise your rights on a personal injury, does that just go to the proceeds? I think not. I think it may actually be a little bit of a distraction from bidding unless they go over the 16,000. Your Honor, the way we read the Nevada law. Let me talk this out, and you tell me how you think it works under Nevada law, because I don't know. So she makes the exemption for $16,000. I assume then that they would have to bid over $16,000 to buy the cause of action, right? Yeah. I mean, the way we read the Nevada law, and there's a case called Amcrem from the Nevada Supreme Court, is that it does make this distinction between the proceeds and the claim itself. And so I think even if you were to decide this under Nevada law, it does not permit the transfer of the right to bring the personal injury claim itself. But I don't think that's how the court should decide this case. Oh, I'm just asking. I'm just thinking through the consequences. Because if this were a bankruptcy case, for example, the chosen action would go to the trustee, and the trustee would have the right to pursue it and have the standing, subject to any amounts and exemption. Now, normally what would happen is the trustee would allow the debtor to proceed. But in some senses in the bankruptcy court, the debtor still has some prudential standing, which is, at least forms part of the issue in this case, is whether it was properly dismissed for lack of standing at all. Right. That's right. Well, the actual notice of execution that she got in paragraph 20 says that among the exemptions are payments in an amount not to exceed $16,150 received as compensation for personal injury. That's correct, Your Honor. I haven't read the whole thing. And it cites this case. So it's clear that the intent of the drafters of the writ of execution, anyway, were to extinguish her rights to bring this case. Well, whether the federal claim is a claim for personal injury is another matter. Well, that's one of the – the only reason I read it is because you're classifying it as a personal injury case somewhere in your brief. That's right, Your Honor. So if you get as far as the state law basis for deciding this appeal, if you reject all of our federal arguments, you would then have to ask, does this come within the meaning of the common law prohibition on the transfer of personal injury claims? And we believe it does. If you look at New Corp, it regards federal securities misrepresentations as personal claims for very similar reasons. Thank you. And this is for an ambulance, Dad? Yes, that's right. Thank you. May it please the Court, Counsel, I represent Clark County Collection Service, LLC, a private entity which is neither bonded by nor affiliated with any federal, state, or local government entity. I'm not just being glib. There's a reason for that disclaimer. It will come up and will be relevant to the preemption argument. This was a lawful state judgment. I think everybody agrees with that. And this is an otherwise lawful procedure under state law. I want to correct one thing, though. This writ was not served on the plaintiff. It was served on plaintiff's counsel. A deputy county sheriff showed up in the office of plaintiff's counsel and served this writ. Now, I know you all practiced at one point in your careers. If a deputy county sheriff showed up in your office, that would get your attention. I know it would get mine. And there were a number of things that the plaintiff could have done. But she didn't enter an appearance in the underlying suit. So under Nevada law, you'd have to serve her as well as counsel because he had not entered an appearance. No, Judge, because under the FDCPA, once... Right. No, I'm talking about Nevada law, not federal law. I mean, you're okay under the Federal Debt Collection Practice. And she never contested the adequacy of the service. My point is... I'm just saying it probably wasn't. If she were not personally served under Nevada law, it's improper service on the writ in the first place, likely. It's an interesting point. It wasn't raised. Judge Corman, I think you went halfway by saying that the plaintiff brought this on herself by not answering the complaint. She also brought this on herself by not responding to the writ. There were a number of things that she could have done in response to the writ to challenge it. She could have gone to the Justice Court where the judgment was entered and asked for a stay of execution. She didn't do that. She could have gone to the district court judge in this case and asked for a stay of the sale. That may have had some issues with the Anti-Injunction Act, but she could have tried at least. She could have paid the judgment. Or the counsel could have called me and resolved the case. There were lots of available remedies to take. May I part the curtain? This is over a $235 ambulance bill? Yes, that ultimately turned into a $793 judgment. Based with attorney's fees on top? Including attorney's fees and costs, yes, sir. We don't have any idea what the ambulance was called for? We don't know the underlying debt? Who assigned this debt to your client? I believe it was Fremont Emergency Service. If it was an ambulance, it would have been a different company. I'm not familiar. It's a medical debt. Does Nevada have a procedure similar to the federal procedure? The federal one is fairly liberal where the motion can be made to relieve a default? Yes, a default, but this was a default judgment. Relief from a default judgment? Yes, similar. The Justice Court rules of civil procedure in Las Vegas are very similar to the federal rules of civil procedure. There's a Rule 62 that lets you stay execution on a judgment. There's also a Rule 60 that lets you set aside a judgment for similar reasons. What are the time limits on that? I can't say specifically. All of this took place shortly after the judgment was entered. The lawsuit was filed within a few months after the judgment was entered. I believe they would have been within the time to do that. This was not an assignment. I'd like to address the assignment issue because to the extent that the Court does take this up under federal law, I would direct this Court to the Riggs case which is actually cited to by the appellant. It's a TILA case and they actually decided in that matter that because Congress intended to secure compliance with the TILA by creating a civil recovery incentive for private litigants that it would undermine the TILA, it would weaken the TILA to prohibit assignments. I think that counsel cites to Riggs for a different proposition but for the assignment issue, it's on point. I didn't think they said in answer to the question I didn't think they said that you couldn't make any assignments to the claim. They just said this type would be prohibited. She could have sold her claim if she found a lucky purchaser for whatever the value of the claim was. If it were a bona fide transaction, they would not object to that. The reasoning is important though because the TILA is similar to the FDCPA in that it set up this private attorney general system where you have claims. By the way, there is one difference. The FDCPA does not have injunctive relief. It is a purely show me the money statute and there's statutory damages, actual damages which almost never occur and then attorney's fees. By the way, I wanted to make the point of why I introduced my client the way I did at the beginning of this argument. Since the filing of this lawsuit and because of the filing of this lawsuit, my client now includes that disclaimer in all of its communications with debtors. Well, that's not in the record, is it? That's a little frustrating. It's not in the record. That's part of the allegations and we're not going to get to that. That's part of the problem when an argument is raised for the first time on appeal. My point only is that when these types of cases are filed, even if the claim doesn't have merit, there is a benefit. In fact, the beauty of the FDCPA, I can't believe I just said that, but the beauty of the FDCPA is that it regulates conduct through the threat of a lawsuit. Judge, you said it yourself, how many of these cases actually go to trial? Almost none of them. They almost never even get into discovery. We've had some pretty substantial cases in my neck of the woods, so my experience is a little bit different from Judge Corman's. But let me get to what I think is one of the major issues, which is leaving aside the technical arguments, which I appreciate, whether it's WAVE or not, the debt is assignable in a battle or whatever, or a claim. I mean, the question is whether or not the execution on a particular chosen action that's the same part of the debt collection procedure frustrates the Fair Debt Collection Practices Act. And why do you think it doesn't? It doesn't, and it doesn't for a number of reasons. And the first one I'd like to get to is that, again, the beauty of the FDCPA is that the threat of the lawsuit is what regulates conduct, not the conclusion of the lawsuit. In all of my cases, the first question from a client is, did we make a mistake? But the second question is, how can we change our behavior going forward, not to right a wrong, but so that we don't get sued again? The best way would be to have a nice Court of Appeals decision that said you can't do this. Then your client would really understand it. My client really doesn't care what this Court's precedent, what precedent this Court sets on this issue because this issue comes up so rarely it really has no interest in doing this sort of thing. This has come up twice in 15 years. So my client really doesn't care about the precedent that the Court sets. It does care about relieving the plaintiff from a judgment when she sat on her hands over and over again. And that does matter to my client. And frankly, I know there's a parade of horribles about the sky falling, but yet counsel concedes that this is a rare instance. And so how can you have it both ways? How can it possibly undermine the FDCPA if this obscure procedure is rarely invoked? I'd also add there's no discussion about CTS versus Waldberger in the briefs or in the argument. Exactly what are we preempting here? The Supremacy Clause preempts laws, not procedures. And the Court in CTS specifically said we don't preempt procedures. We don't preempt state court cases. We only preempt laws. I still haven't heard what specific state law plaintiff seeks to preempt. And I would add that the CTS case is important because the Court based its decision on implied preemption by saying that when you have an express preemption clause and the issue isn't raised in the express preemption clause, that an implied preemption argument is particularly weak. The FDCPA is not the full universe of remedies for a plaintiff. There are a number of states that have laws that go above and beyond the FDCPA, such as California, the Rosenthal Act, and there's been no discussion. But states didn't care about going over. They just wanted to set minimum standards. And if states wanted to go over it, that was fine. Exactly. But one of the reasons that the Court rested its decision in CTS on whether there was implied preemption with the CERCLA was because of the fact that the CERCLA was not a complete remedial framework. And the FDCPA is the same way. So the parade of horribles, let me go through them, I only have a minute left. There's an accusation that it would discourage lawsuits. I don't think that's possible because this would only come up after a lawsuit is filed. Again, the very occurrence of this is so rare that it will not interfere with the uniform scheme. And frankly, again, I would argue it doesn't interfere with the FDCPA because the plaintiff had alternate available remedies to her once this writ was served upon her and she did nothing. It is inherently unfair for my client to be taken to task when plaintiff did nothing. She had two opportunities to solve this. One by answering the complaint and one by responding to the writ of execution. That wasn't served on her. It was served on her counsel. Right. I'm just saying, when there's no appearance in the state court by an attorney, when there was none in this case, it was a default judgment, the proper procedure is to serve the plaintiff individually. I don't think you can have a valid writ of execution unless you serve the plaintiff individually. It's laudable to serve her counsel. You should have done something. I'm not confident. I haven't researched it. I think my client would have risked another FDCPA lawsuit if it had contacted the plaintiff directly. Once she's represented by counsel, that's it. There's a wall up. My client can't do anything. It's an odd circumstance. It is an odd circumstance. Again, I say that it's more of an interesting intellectual issue. It was fun to prepare for this. Like I said, I don't think my client particularly cares about the precedent going forward. Why didn't you just settle? You won the case below. Your client is spending much more than what in the real world its damages are. You're absolutely right. I've tried numerous times to settle this case with no avail. One of the things I was hoping for when this writ was served is that I was going to get a phone call from opposing counsel to try to settle the case. One never came. It's particularly frustrating because, you're right, my client has spent far more in attorney's fees than it ever could have to resolve this. One of the reasons was to trigger a settlement discussion from a plaintiff's counsel, not Mr. Gupta, who at the time, up until that point, had not been reasonable. I think we're probably getting too far afield on the settlement. Of course, if the parties are interested in the services of our circuit mediator, I'm sure our circuit mediator would be happy to step in. I think we have your argument at hand. Any further questions? Our questions took you over time, but we'll give you a minute for rebuttal. I'll try to be very brief. I do want to just pick up on one thing that Judge Reinhart said, which is the rule that we're urging here is a very limited rule. It only affects the circumstances in which it is the defendant itself that seeks to acquire the claim, not for the purposes of pressing it, but for the purposes of burying that claim. And that's precisely the kind of practice that is described in the law review article I mentioned, which is called Short-Circuiting the Justice System, How Defendants are Misusing Writs of Execution. It is not a common practice, but I think to address some of the practical concerns that were just discussed, I think if there is a Ninth Circuit opinion that says this kind of practice is permissible, this will not be the only case. There will be many cases in which defendant debt collectors will find it very expedient to use the debt collection process to wipe out these claims. And that is entirely antithetical to Congress's design in creating a private enforcement scheme. And so I think, Judge Thomas, the correct question is the one you asked, which is, is it contrary to congressional purposes to allow this kind of tactic? And I think the answer, if you look at what Congress was really trying to do and the practical results of allowing this, the answer is yes. And the case law is uniform that it is perfectly permissible and appropriate to decide that as a matter of federal law in light of congressional purposes. Thank you. Thank you, counsel.
judges: Reinhardt, Thomas, Korman